Rumsey *v.* New York & Pennsylvania Railroad Company, Appellant.

*Equity—Specific performance—Contract—Stock—Corporation.*

Where a person has a contract by which the stock of a corporation in the hands of a third person is to be delivered to him when he has complied with certain conditions, and it appears that the stock has no ascertainable market value and carries with it a controlling voice in the management of the corporation, such person on fulfilling the conditions named is entitled to a decree for specific performance of the contract.

*Railroads—Corporations—Merger of foreign and domestic company—Illegal contract—Participation in profits by officers—Constitution of Pennsylvania, article 17, section 6—Act of May 15, 1874, P. L. 178.*

Where the officers of a railroad company organized in New York, enter into a contract with other parties in which the railroad is not a party, by which they are to share in the profits arising from the construction and equipment of the railroad, and subsequently the railroad company is merged and consolidated with a railroad company organized under the laws of Pennsylvania, and it appears that the contract, although void in Pennsylvania as in violation of article 17, section 6, of the constitution of that state, and the Act of May 15, 1874, P. L. 178, is valid in New York as between the parties to it, the contract may be enforced in Pennsylvania.

It is very doubtful whether even as regards the corporation itself, contracts legally made by it could be invalidated by a subsequent act of merger,

but however that may be, it is clear that no such effect could be produced upon a private contract between individuals to which the corporation was not a party. Contracts valid by the law of the place and time where they are made and are to be performed, are valid everywhere. Per MITCHELL, J.

Argued May 6, 1902. Appeal, No. 3, Jan. T., 1902, by defendant, from decree of C. P. Potter Co., Dec. T., 1899, No. 2, on bill in equity in case of Joseph B. Rumsey v. New York & Pennsylvania Railroad Company, Theodore Cobb, William Cobb, William Richardson, Benton McConnell and William Beaver. Before McCollum, C. J., Mitchell, Brown, Mestrezat and Potter, JJ. Reversed.

Bill for specific performance of a contract.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree of specific performance.

*H. C. Dornan*, of *Dornan & Ormerod*, with him *W. I. Lewis* and *George N. Orcutt*, for appellant.—In New York contracts between corporations and their officers, or in which officers are interested, are not void, but voidable only at the election of the corporation itself, and cannot be questioned collaterally: Barnes v. Brown, 80 N. Y. 527; Barr v. N. Y., L. E. & W. R. R. Co., 125 N. Y. 263 (26 N. E. Repr. 145); Strobel v. Brownell, 16 Misc. 657 (40 N. Y. Supp. 702); Skinner v. Smith, 134 N. Y. 240 (31 N. E. Repr. 911); Forker v. Brown, 10 Misc. 161 (30 N. Y. Supp. 827); Risely v. Indianapolis, Bloomington & W. R. R. Co., 62 N. Y. 240.

The principle, that voidable contracts can only be questioned by the party directly interested, and not collaterally, is the law of Pennsylvania: Painter v. Henderson, 7 Pa. 50; Lair v. Hunsicker, 28 Pa. 115; Church v. Winton, 196 Pa. 107.

The consolidation of corporations does not transfer to either state, and enforce therein, the legislation of the other: Delaware Railroad Tax Case, 18 Wallace, 206; Racine, etc., R. R. Co. v. Farmers' Trust Co., 49 Ill. 331; Graham v. Boston, etc., R. R. Co., 14 Fed. Repr. 757.

The acts of assembly of Pennsylvania prohibiting contracts between corporations and officers do not include or make void

contracts not expressly within their provisions, even though such contracts are within their mischief. Such contracts. are merely voidable, not void · Trainer v. Wolfe, 140 Pa. 279.

Acts of assembly of Pennsylvania do not include contracts made outside of the state: Siegel v. Robinson, 56 Pa. 19; Clark v. Searight, 135 Pa. 173; Ross v. Wigg, 34 Hun, 192.

Any circumstance that shows that a decree of specific performance, even of a written agreement, would be unfair, or inequitable, is sufficient to defeat the application: Maguire v. Heraty, 163 Pa. 381; Brewster's Equity Practice, section 5721; Dalzell v. Crawford, 1 Clark, 155.

Where a deed or contract is made for an illegal purpose, a defendant against whom it is sought to be enforced may show the illegality of the transaction, and a court of justice will refuse its aid to enforce a contract thus wrongfully entered into: Appeal of Bredin et al., 92 Pa. 241; Ham v. Smith, 87 Pa. 63.

*Henry ·C. McCormick* with him *Mullin & Seibert, C. L. Peck & Son,* and *Seth T. McCormick* for appellee.—If this contract was in violation of the constitution and laws of the state, as it seems clearly to have been, the defendants, as plaintiffs, could not have enforced it against Rumsey as defendant; and it has been held that a contract not enforceable at law or in equity cannot be used as a defense to annul a valid contract with another: Sickman v. Lapsley, 13 S. & R. 224; Eyrick v. Hetrick, 13 Pa. 488; Swan v. Scott, 11 S. & R. 155; Thorne v. Travellers Insurance Co., 80 Pa. 15; Holt v. Green, 73 Pa. 198; Wright v. Antwerp Pipe Company, 12 W. N. C. 325; Milford Borough v. Milford Water Co., 124 Pa. 610; Plugger v. Township Board of Overyssel, 11 Mich. 222; Thomas v. Brownwell, etc., Ry. Co., 2 Fed. Repr. 877; Wardell v. Union Pacific R. R. Co., 103 U. S. 651.

It was held by this court in the case of Commonwealth v. Atlantic, etc:, Ry. Co., 53 Pa. 9, that upon filing in the office of the secretary of the commonwealth the certificate of consolidation of certain railroad companies under the act of March 24, 1865, the company thus merged became a legal corporation in Pennsylvania. If, therefore, the New York & Pennsylvania Railroad Company became a legal corporation of this commonwealth after the merger took place, then all the liabilities and

duties, imposed by the laws of Pennsylvania, attached to that corporation and no act performed by said corporation would be regarded as legal as to it and illegal as to other railroad corporations of the state.

The case falls directly within the decision of this court in Goodwin Company's Appeal, 117 Pa. 514, and gives equity jurisdiction to decree specific performance, for the reason that a recovery in damages would not be compensatory.

OPINION BY MR. JUSTICE MITCHELL, October 13, 1902:

The facts of this case are somewhat complicated, but so far as necessary to develop the principles involved may be stated in reasonable compass.

In July, 1895, the promoters of the New York & Pennsylvania Railroad Company, a New York corporation in process of organization but not yet incorporated, contracted in the name of the company with plaintiff for the building, by the latter, of a railroad from Hornellsville, New York, to the state line of Pennsylvania at or near Genesee. Plaintiff was to be paid in the stock and bonds of the road, and at or about the same time in order to raise money plaintiff sold to defendants certain shares of the stock and bonds to be received by him. The contract dated July    , 1895, also contained a provision for a further division of stock, etc., which will be referred to later.

The road was incorporated in November, 1895, and in 1896 was consolidated with the Olean, Oswayo & Eastern Railroad, a Pennsylvania corporation with a road already built and in operation, and shares of the consolidated company (retaining the name of the New York & Pennsylvania Company) were issued in place of shares in the merged companies.

By contract dated September    , 1897, between plaintiff and the two Cobbs of one part, and Richardson, McConnell and Beaver, of the other part, the former undertook to deposit in the hands of the Cobbs a majority of the stock of the new New York & Pennsylvania Company to be held so long as either of the parties of the second part " is owner of any bonds of said company," or until the said parties " should have received and refused a bona fide offer of eighty cents on the dollar " of said bonds. The present bill was based upon this agreement and the court below found that the conditions had been complied with

by plaintiff, that he was the owner of 2,000 shares deposited with the Cobbs, that defendants had refused a bona fide offer of eighty cents on the dollar of their bonds, and that as the stock had no ascertainable market value and carried with it to plaintiff a controlling voice in the management (Goodwin Co.'s Appeal, 117 Pa. 514), he would, on these facts be entitled to a decree for specific performance.

Up to this point we have not been convinced that the learned court below was in error either as to the facts or the law.     One branch of the defense however remains to be considered.

The contract of July, 1895, already referred to, contained a provision that, "It is further agreed that the said J. B. Rumsey shall assign and does hereby assign, unto the parties of the second part, and to each of them severally, an equal interest in all rights acquired by and in him to the stock and bonds of the said company agreed to be delivered to him by the said company in payment for the building of its railroad by said Rumsey, and also assigns to said parties as aforesaid as collateral security for the performance of this contract on the part of said Rumsey all stock and bonds payable or deliverable to him under his aforesaid contract with said company and all rights which said Rumsey has under and by virtue of said contract and hereby authorizes the parties of the second part to demand and receive from said railroad company all the said stock and bonds payable or deliverable to the said Rumsey by virtue of said contract."

In accordance with this agreement the parties from time to time advanced money for the undertaking, and on September 8, 1898, the two Cobbs, plaintiff and one Crittenden, met and agreed in writing to a settlement and a schedule of distribution of stock, which if applicable would materially affect the right of plaintiff to compel the reassignment of the 2,000 shares by the Cobbs, as sought in this suit.

All of the parties to the contract of 1895 except plaintiff were officers of the railroad company, and the court below found that the clause above quoted was "in effect a contract for the participation by the parties thereto in the profits of the construction and equipment of the railroad," and in violation of article 17, section 6, of the constitution and the Act of May 15, 1874, P. L. 178.     He therefore held, citing Trainer v. Wolfe, 140 Pa.

279, Milford Boro. v. Milford Water Co., 124 Pa. 610, and other cases, that the contract was void and could not avail as a defense in this action.

But it appeared that the contract of 1895 was made in the state of New York, and the original New York & Pennsylvania Railroad Company, to which it referred, was a New York corporation, whose purpose was to build a railroad wholly within that state. It also appears that by the law of New York such a contract, though voidable by the corporation, was not void, and was not open to collateral attack. Conceding this, the court nevertheless held that the merger of the railroad company with the Olean, Oswayo & Eastern Company in 1896, and the formation of the present New York & Pennsylvania Company, made the latter so far a Pennsylvania corporation as to subject it and its contracts to the regulations and disabilities of Pennsylvania law. After citing the Act of March 24, 1865, P. L. 49, that upon the making and perfecting of the agreement and act of consolidation, etc., " the several corporations parties thereto shall be deemed and taken to be one corporation . . . . possessing all the rights, privileges and franchises, and subject to all the restrictions, disabilities and duties of such corporations so consolidated," the learned judge proceeded, " We think, therefore, the consolidated company assumed all the restrictions and disabilities imposed upon either of the constituent companies by the laws of the state under which they were organized. The restrictions and disabilities on one of these corporations were, that its directors could not become interested ' in any contract for the furnishing of material or supplies ' to any railroad or supply company of which they were directors, and that those restrictions, by the 3d section of this act, attached to the consolidated company. The 4th section is still stronger. ' All debts, liabilities and duties, of either of said companies shall henceforth attach to said new corporation, and be enforced against it, to the same extent, as if said debts, liabilities and duties, had been incurred or contracted by it.' But further, it was held in the case of Commonwealth v. Atlantic, etc., Ry. Co., 53 Pa. 9, that upon filing in the office of the secretary of the commonwealth the certificate of consolidation under the act of March 24, 1865, the company thus merged became a legal corporation in Pennsylvania. It seems plain, therefore, that if

the New York & Pennsylvania Railroad Company became a legal corporation of the state of Pennsylvania after the merger took place, then all liabilities and duties under the laws of Pennsylvania attached to that corporation, and all acts or contracts illegal as to the constituent corporation, must be illegal as to the consolidated corporation."

In applying this principle, however, the court gave too great a retroactive effect to the merger. It is very doubtful whether even as regards the corporation itself contracts legally made by it could be invalidated by a subsequent act of merger, but however that may be, it is clear that no such effect could be produced upon a private contract between individuals to which the corporation was not a party. Contracts valid by the law of the place and time where they are made and are to be performed are valid everywhere. The agreement of 1895 was between individuals and appears to have been valid in New York where it was made and was to be executed. The railroad company was not party but was the subject of it, and owing to the relation of some of the contracting parties to the railroad, the contract would have been illegal and void if made in this state and in regard to a Pennsylvania corporation. But being a New York contract between individuals and valid there when made, it could not be invalidated by a subsequent act of merger by the corporation whereby the latter became subject to Pennsylvania law. The extent to which the company's own disabilities would be retroactive may be open to question, but the rights of individuals lawfully contracting were fixed by the contract and could not be destroyed by the subsequent act of a corporation not party to their contract. The principle on which the learned court excluded the agreement of 1895, as a ground of defense, was error.

The court expressed some doubt whether the settlement and accounting by the parties dated September 8, 1898, was intended to include the shares involved in the controversy, but, owing to the view he took, did not decide the question. In our view it becomes a material fact.

Decree reversed and record remitted with directions to open the case for rehearing and determination in accordance with the views expressed in this opinion, costs to abide the final decision.